Peter G. Bertling (SBN 131602)
Bertling Law Group
21 East Canon Perdido Street, Suite 204B
Santa Barbara, CA 93101
Telephone: 805-879-7558
Facsimile: 805-869-1597
peter@bertlinglawgroup.com

Attorneys for Plaintiff SHELLEY CARPENTER, Individually, and On Behalf of the
ESTATE OF RAYMOND C. CARPENTER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLEY CARPENTER, Individually, and On Behalf of the ESTATE OF RAYMOND C. CARPENTER, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| UNITED STATES OF AMERICA, K'IMA:W MEDICAL CENTER, HOOPA VALLEY TRIBE, EVA MARIE SMITH, M.D., TRACY LANGHURST, PA-C, RODNEY CADE, M.D., KIRSTEN M. ANKROM, and KEVIN H. LEE, D.O., | |
| Defendants. | |

COMES NOW, Plaintiff SHELLEY CARPENTER, Individually, and On Behalf of the ESTATE OF RAYMOND C. CARPENTER, by and through counsel, states as follows for her Complaint against Defendants UNITED STATES OF AMERICA, K'IMA:W MEDICAL CENTER, HOOPA VALLEY TRIBE, EVA MARIE SMITH, M.D., TRACY LANGHURST, PA-C, RODNEY CADE, M.D., KIRSTEN M. ANKROM, and KEVIN H. LEE, D.O.

///

# I.   JURISDICTION AND VENUE

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2.      In compliance with 28 U.S.C. § 2675, Shelley Carpenter ("Ms. Carpenter") filed a notice of administrative claim with the Department of Health and Human Services ("DHHS"), attached as **Exhibit A**. The administrative claim was received by DHHS' General Law Division Claims Office on November 3, 2021.

3.      It has been at least six months since DHHS has received the administrative claim.

4.      Accordingly, Ms. Carpenter's causes of action are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the causes of action at issue in this case arose at the K'ima:w Medical Center ("KMC") at 535 Airport Road, P.O. Box 1288, Hoopa, CA 95546.

6.      At all times relevant to this action, the Hoopa Valley Tribe owned and operated KMC and its affiliated clinics.

7.      At all times relevant to this action, the agents, servants, employees, and personnel of KMC were acting within the course and scope of their employment in providing and/or failing to provide medical care and treatment to Mr. Carpenter.

8.      Mr. Carpenter was an enrolled member of the Hoopa Tribe, and thus was entitled to medical care and treatment at KMC and its affiliated clinics.

9.      The medical care described as follows was provided to Mr. Carpenter at KMC unless otherwise stated.

# II.   ALLEGATIONS

10.      Ms. Carpenter restates and re-alleges paragraphs 1 through 9 as if fully stated herein.

///

11.     By the time of his death, Mr. Carpenter had a 45-pack-year history of smoking.

12.     Mr. Carpenter worked for years around fiberglass and asbestos.

13.     Mr. Carpenter's smoking history placed him at higher risk for development of lung cancer than a person who did not smoke.

14.     Mr. Carpenter's risk of lung cancer was further increased by his history of working around fiberglass and asbestos.

15.     Mr. Carpenter's smoking was known to his care providers at KMC.

16.     Mr. Carpenter died on May 20, 2021.

17.     Mr. Carpenter's death certificate lists the cause of Mr. Carpenter's death as Acute Respiratory Failure, Lung Cancer, and Chronic Obstructive Pulmonary Disease.

18.     Mr. Carpenter was seen regularly by his care providers at KMC, between February 18, 2016 and his death, by Eva Marie Smith, M.D. ("Dr. Smith"), Tracy Langhurst ("Ms. Langhurst"), Rodney Cade, M.D. ("Dr. Cade"), Kirsten M. Ankrom ("Ms. Ankrom"), and Kevin H. Lee, D.O. ("Dr. Lee").

19.     Prior to December 9, 2020, Mr. Carpenter's KMC care providers did not discuss, recommend, or provide any kind of lung cancer screening.

20.     For at least two years prior to his lung cancer diagnosis, Mr. Carpenter repeatedly told his KMC providers, particularly Dr. Smith, that he was experiencing a persistent cough, unusual fatigue, and atypical right-sided chest pain.

21.     On at least two occasions, these complaints were made to Dr. Smith via telephone and were witnessed by Ms. Carpenter.

22.     Neither Dr. Smith nor any other KMC provider ordered chest imaging of any kind for Mr. Carpenter.

23.     Neither Dr. Smith nor any other KMC provider ordered any other appropriate test in response to Mr. Carpenter's complaints of cough, fatigue, and chest pain.

///

24.     Neither Dr. Smith nor any other KMC provider referred Mr. Carpenter to an appropriate specialist in response to his complaints of cough, fatigue, and chest pain.

25.     Beginning in 2018, Mr. Carpenter's routine CBC tests showed low red blood cell counts, which was not discussed by Dr. Smith with her patient until December 18, 2019.

26.     On December 9, 2020, Mr. Carpenter presented to the emergency department ("ED") of Providence St. Joseph Hospital in Eureka, California ("St. Joseph") with atypical chest pain.

27.     A CT was ordered and revealed an "irregularly shaped mass in the right upper lobe [of his lung], highly concerning for primary malignancy."

28.     Mr. Carpenter was told to follow up with his primary care provider as soon as possible for further evaluation and appropriate referrals.

29.     Mr. Carpenter presented to Dr. Smith for further evaluation, reporting pain of 9 out of 10, on December 10, 2020.

30.     Dr. Smith ordered a repeat CT, which was scheduled for January 11, 2021.

31.     A repeat CT was not provided until February 26, 2021, and that CT was performed at St. Joseph and revealed the mass discovered previously had increased in size.

32.     On March 19, 2021, Mr. Carpenter underwent needle biopsies of his lung and lymph nodes at St. Joseph which revealed squamous cell carcinoma of the lung.

33.     Also on March 19, 2021, Mr. Carpenter underwent an MRI at St. Joseph which detected a 2.1 cm metastatic lesion on his brain.

34.     Mr. Carpenter was subsequently diagnosed with inoperable stage IV non-small cell carcinoma of the lung.

35.     Mr. Carpenter underwent radiation therapy, stereotactic radiosurgery, and chemotherapy.

36.     Despite aggressive treatment, Mr. Carpenter died on May 20, 2021.

37.     Mr. Carpenter was 61 years old when he died.

38.    Mr. Carpenter's injuries and death are a direct and proximate result of the negligent medical care provided by his healthcare providers at KMC.

### III.   FIRST CAUSE OF ACTION
### NEGLIGENCE: WRONGFUL DEATH

39.    Ms. Carpenter restate and re-allege paragraphs 1 through 38 as if fully stated herein.

40.    As a provider of medical services to Mr. Carpenter, KMC and its agents, servants, or employees, including but not limited to Dr. Smith, owed Mr. Carpenter a duty to provide him medical care consistent with the governing standard of medical care.

41.    The agents, servants, or employees of KMC and its affiliates, including but not limited to Dr. Smith, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

   a.  Negligent failure to conduct appropriate lung cancer screening;

   b.  Negligent failure to document Mr. Carpenter's symptomatic complaints;

   c.  Negligent failure to follow up on Mr. Carpenter's symptomatic complaints;

   d.  Negligent delay in diagnosing Mr. Carpenter's lung cancer;

   e.  Negligent failure to provide appropriate and timely treatment for Mr. Carpenter's lung cancer; and

   f.  Any and all other deviations from the standard of care which will be developed through further investigation, discovery, and expert review.

42.    As a direct and proximate result of the aforementioned negligence of Defendants, Ms. Carpenter claims the following damages:

   a.  Compensation for all economic damages, including funeral and burial expenses, financial support the decedent would have provided, loss of gifts or benefits Plaintiff would have expected to receive from decedent, and reasonable value of household services decedent would have provided;

///
///

b.  Compensation for the loss of love, companionship, comfort, care, assistance, protection, affection, society, sexual relations, and moral support provided by decedent;

c.  Compensation for the loss or damage that the decedent sustained or incurred before death that the decedent would have been entitled to recover had the decedent lived; and

d.  Compensation for any other damages sustained by Ms. Carpenter as a proximate result of the negligence of KMC's employees and/or agents.

## IV.  SECOND CAUSE OF ACTION
## SURVIVAL CLAIM

43.  Plaintiff restates and re-alleges paragraphs 1 through 42 as if fully stated herein.

44.  As a provider of medical services to Mr. Carpenter, the United States and its agents, servants, or employees at the K'ima:w Medical Center and its affiliates, including but not limited to Eva M. Smith, M.D., Tracy Langhurst, Rodney Cade, M.D., Kirsten M. Ankrom, and Kevin H. Lee, D.O., owed Mr. Carpenter a duty to provide medical care consistent with the governing standard of medical care.

45.  The agents, servants, or employees of KMC and its affiliates, including but not limited to Dr. Smith, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

a.  Negligent failure to conduct appropriate lung cancer screening;

b.  Negligent failure to document Mr. Carpenter's symptomatic complaints;

c.  Negligent failure to follow up on Mr. Carpenter's symptomatic complaints;

d.  Negligent delay in diagnosing Mr. Carpenter's lung cancer;

e.  Negligent failure to provide appropriate and timely treatment for Mr. Carpenter's lung cancer; and

f.  Any and all other deviations from the standard of care which will be developed through further investigation, discovery, and expert review.

46.   As a direct and proximate result of the aforementioned negligence of Defendants, Ms. Carpenter claims the following damages:

a.   Compensation for Mr. Carpenter's physical pain, mental suffering, anguish, disfigurement, and disability;

b.   Compensation for the loss or damage that the decedent sustained or incurred before death that the decedent would have been entitled to recover had the decedent lived; and

c.   Compensation for any other damages sustained by Ms. Carpenter as a proximate result of the negligence of KMC's employees and/or agents.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant judgment in her favor against the Defendants in the amount of Three Million Dollars ($3,000,000.00), together with any other costs as she may be lawfully entitled to recover.

Respectfully submitted,

DATED: May 13, 2022          BERTLING LAW GROUP


*/s/ Peter G. Bertling*
Peter G. Bertling
Attorneys for Plaintiff
SHELLEY CARPENTER,
Individually, and On Behalf of the
ESTATE OF RAYMOND C. CARPENTER